UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DONALD LEE ARMOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:17 CV 50 |
| vs. | ) |
| | ) |
| STEVE LAWERANCE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

Donald Lee Armour, a *pro se* prisoner, filed an amended complaint alleging that he received inadequate medical treatment while a pretrial detainee at the Porter County Jail. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On July 8, 2016, Armour was taken to the Porter County Jail. Ten days later, he complained to Dr. Eric Tchaptchet about pain and numbness stemming from a 1994 cervical fusion. An x-ray was performed and Armour was prescribed Flexeril, a muscle relaxer. Armour complained to Dr. Tchaptchet that the Flexeril was ineffective. Nevertheless, Dr. Tchaptchet did not change his medication or order any further

treatment. On July 27, 2016, Armour's criminal defense attorney contacted the Porter County Jail Warden, Steven Lawerance, about Armour's need for medical assistance. Lawernce did not reply to this letter and Armour did not receive any further medical treatment for this condition until September 22, 2016, when he was approved for an MRI. He was then seen by Dr. Anton Thompkins, a neuro-specialist. Dr. Thompkins diagnosed Armour with neuropathy and prescribed him with Neurontin. Armour sues Dr. Tchaptchet and Warden Lawerance for being deliberately indifferent to his neuropathy.

In medical cases, the Constitution is violated only when a defendant was deliberately indifferent to an inmate's serious medical needs.[1] *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Armour has alleged a serious medical condition: his condition caused pain for an extended period of time and required medical treatment.

---

[1] Although Armour claims that the defendants have violated his Eighth Amendment rights, he was a pre-trial detainee when these events occurred. "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, [courts] apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). *See also Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 554 n.31 (7th Cir. 2016) (clarifying that *Kingsley v. Hendrickson*, 576 U.S. __, __; 135 S.Ct. 2466 (2015) did not change the applicability of the Eighth Amendment standard to pre-trial detainee deliberate indifference claims).

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citation omitted). "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (internal citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Giving Armour the inferences to which he is entitled at this stage, he has alleged that Dr. Tchaptchet was deliberately indifferent to his neuropathy. When Armour complained of pain, he was initially prescribed Flexeril. However, when Armour informed Dr. Tchaptchet that Flexeril was ineffective, the doctor did not change his medication or provide any further medical treatment. *Greeno v. Daley*, 414 F.3d 645, 655

3

(7th Cir. 2005) (to treat a serious medical condition with treatment known to be ineffective is deliberately indifferent). It can plausibly be inferred that Dr. Tchaptchet was aware of Armour's numerous requests for medical care and need for a change in medication over an extended period of time, yet did not respond to Armour's pleas for help for more than two months. Such a delay in providing treatment can constitute deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 752-3 (7th Cir. 2011). These allegations, taken together, state a plausible claim of deliberate indifference to Armour's serious medical needs.

Armour's claim against Warden Lawerance does not fare as well. Armour does not allege, nor is it reasonable to infer from the complaint, that the warden played a direct role in the providing of medical care. Nevertheless, Armour asserts that the warden had personal involvement sufficient to trigger liability under § 1983 because his criminal defense attorney sent the warden a letter complaining about Armour's need for medical treatment. "Section 1983 does not establish a system of vicarious responsibility" and "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). As the Seventh Circuit has explained:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that

4

> every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to [delegate] to the prison's medical staff the provision of good medical care.

*Id.* at 595.

Nothing in the complaint indicates that the warden did anything to cause or exacerbate Armour's serious medical problems, nor did the warden stand in the way of his treatment. At most, Armour alleges that the warden knew that he was unhappy with the treatment he was receiving from Dr. Tchaptchet for pain. Non-medical prison officials cannot be held liable for deferring to the judgment of medical professionals. *Id.* at 596 ("[A] layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference . . . ."); *Greeno*, 414 F.3d at 656 ("If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). For these reasons, Armour fails to state a claim against Warden Lawerance.

On August 18, 2016, Armour claims that his blood pressure spiked, which led to him suffering a series of transient ischemic attacks (strokes). Either Nurse Christin or Nurse Stephanie—Armour is unsure which—arrived at Armour's dorm to provide medical assistance. The nurse told officers to prepare a transport to take Armour to the hospital. The nurse then called Dr. Tchaptchet, who instructed her to cancel the transport and instead give Armour a dose of Clonidine, a blood pressure medication, and take Armour to the medical unit of the jail. Armour did not receive any further

5

treatment at the medical unit. In the early morning hours of August 19, Armour suffered a second set of ischemic attacks. Armour alleges he suffered this second set of attacks because his first set was not properly treated.

Armour notified an unidentified guard on duty, who told him to drink some water, lay back down, and go to sleep. The guard informed Armour not to bother him again. About an hour later, Nurse Jennifer came to Armour's door. She took Armour's vital signs and told officers that Armour needed to go to the hospital because his blood pressure was too high. Nurse Jennifer then called Dr. Tchaptchet, who told her to cancel the transport and to instead give Armour another dose of Clonidine to lower his blood pressure. On October 4, 2016, Armour was transferred to the Kankakee County Jail. Armour sues Dr. Tchaptchet and two nurses for being deliberately indifferent to his ischemic attacks.

Giving Armour the inferences to which he is entitled at this stage, he has alleged that Dr. Tchaptchet was deliberately indifferent to his ischemic attacks. When the nurses were going to have Armour sent to the hospital, Dr. Tchaptchet intervened and decided instead to only give Armour a dose of Clonidine and house him in the medical wing with no further treatment. Though mere disagreement over treatment is insufficient to trigger § 1983 liability, it is plausible based on these allegations to infer that Dr. Tchaptchet's actions were based on unconcern rather than medical treatment. Indeed, Armour alleges that Dr. Tchaptchet's failure to properly treat his first set of attacks led to a second set of attacks the next day. Though further fact finding may

show Dr. Tchaptchet's actions and treatment to have been reasonable, Armour has alleged enough at this stage.

Armour's claims against the nurses are another matter. Based on Armour's allegations, the nurses triaged his condition and recommended him be sent to the hospital. They then called Dr. Tchaptchet who disagreed with their suggestion. The doctor ordered them to provide Armour with a dosage of Clonidine and then house him in the medical unit. Though the nurses believed that Armour should have been taken to the hospital, there is nothing in the complaint to suggest that the nurses believed that following Dr. Tchaptchet's plan of care caused any of them to "ignore an obvious risk" to Armour's health or safety. *Cf. Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (a nurse acts with deliberate indifference when she "ignores obvious risks to an inmate's health."). Therefore, Armour has not stated a claim of deliberate indifference with regard to any of the nurses.

Finally, Armour brings suit against Captain Taylor for refusing to identify or sanction the unnamed guard who ignored his ischemic attack on August 19, 2016. This does not state a constitutional claim against Captain Taylor. An actual denial of a civil right is necessary before a cause of action arises. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596. There are no such allegations against Captain Taylor.

7

For these reasons, the court:

(1) **GRANTS** Donald L. Armour leave to proceed against Dr. Eric Tchaptchet in his individual capacity for compensatory and punitive damages for being deliberately indifferent to Armour's neuropathy from July 18, 2016, through September 22, 2016, in violation of the Fourteenth Amendment;

(2) **GRANTS** Donald L. Armour leave to proceed against Dr. Eric Tchaptchet in his individual capacity for compensatory and punitive damages for being deliberately indifferent to Armour's ischemic attacks on August 18, 2016, through October 4, 2016, in violation of the Fourteenth Amendment;

(3) **DISMISSES** Steve Lawerance, Nurse Christin, Nurse Stephanie, Nurse Jennifer, Nurse Amanda and Mr. Taylor as defendants;

(4) **DISMISSES** all other claims;

(5) **DIRECTS** the clerk and the United States Marshals Service to issue and serve process on Dr. Eric Tchaptchet, at the Porter County Sheriff's Department with a copy of this order and the amended complaint (DE # 16), pursuant to 28 U.S.C. § 1915(d); and

(6) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Eric Tchaptchet respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

Date: April 12, 2018

**SO ORDERED.**

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT