UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DONALD LEE ARMOUR, | |
|---|---|
| Plaintiff, | |
| v. | No. 2:17 CV 50 |
| ERIC TCHAPTCHET, | |
| Defendant. | |

## OPINION and ORDER

Donald Lee Armour, a prisoner without a lawyer, filed a motion for default judgment against Dr. Eric Tchaptchet. (DE # 30.) Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. When a defendant fails to answer a complaint or otherwise defend himself, that party is in default. Fed. R. Civ. P. 55(a). Although Dr. Tchaptchet's answer was due on January 30, 2019 (*see* DE # 25), he has not appeared, responded to the complaint, or otherwise defended himself in this case to date. Thus, the Clerk entered default against him. (DE # 29.)

The entry of default is only the first step in obtaining a default judgment. Applying to the court for a default judgment is the second step. Fed. R. Civ. P. 55(b)(2). In general, once a default is entered, "the well-pleaded allegations of the complaint relating to liability are taken as true . . .." *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (citations omitted); *but see* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688.1 (4th ed. 2019) ("[A] party in default does not admit conclusions of law."); *Rosenbaum v. Seybold*, No. 1:06-

CV-352-TLS, 2013 WL 633284, at *7 (N.D. Ind. Feb. 20, 2013) (conclusions of law not deemed admitted). However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (citation omitted); *see also Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994) (*citing United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1988)). A default judgment may not be entered without a hearing pertaining to damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (*quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).[1]

Armour, who was housed at the Porter County Jail during the time period in

---

[1] Of note, absent specific statutory provisions not relevant here, there is no absolute right to a jury trial on damages in cases where a default has been entered. *See Sells v. Berry*, 24 Fed. Appx. 568, 571–72 (7th Cir. 2001) ("In the case of a default, only 28 U.S.C. § 1874 may guarantee a right to a jury trial, and that statute applies only to actions to recover the forfeiture annexed to any articles of agreement, covenant, bond, or other specialty.") (internal quotation marks and citation omitted); *see also Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (same, collecting cases); *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default in these circumstances."); *Dierschke v. O'Cheskey*, 975 F.2d 181, 185 (5th Cir. 1992) ("[I]n a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (4th ed. 2019) ("But neither side has a right to a jury trial on damages.").

question, was granted leave to proceed against Dr. Tchaptchet for being deliberately indifferent to his undiagnosed neuropathy from July 18, 2016, through September 22, 2016, and for being deliberately indifferent to his two ischemic attacks on August 18–19, 2016, until his transfer on October 4, 2016, both in violation of the Fourteenth Amendment. (DE # 17.) With regard to his neuropathy, Armour alleges that he arrived at the Porter County Jail on July 8, 2016, with preexisting issues from a neck fracture/cervical fusion in 1994. He began complaining to Dr. Tchaptchet on July 18, 2016, about "numbness, tingling, pins and needles, and aching pain" from his right shoulder to his lower right extremities. (DE # 16 at 3.) He was given an x-ray, which according to the documents attached to the complaint, was "within normal limits cervical fusion remains stable." (*Id*. at 14.) Dr. Tchaptchet also prescribed Flexeril, a muscle relaxer, but Armour alleges that he remained in pain and continued to complain to medical staff. Armour states that he was "finally approved for an MRI" on September 22, 2016. (*Id*. at 7.) However, documents attached to the complaint show that the MRI was performed on September 8, 2016, and that he was seen by an outside physician, Dr. Anton A. Thompkins, on September 22, 2016, to discuss the results of the MRI, which indicate:

> [N]o evidence of any significant neural compromise as per my reading in the cervical region. There is some mild foraminal narrowing, but I do not think that is the cause of symptoms today. Standing AP and lateral cervical xrays show no evidence of any dislocations. . . . I have told him I think the best mode of treatment would be, at this point, treat him from a medical standpoint. I would try him on some Neurontin 300 mg 3 times a day to see if that helps him, but I am comfortable in saying that surgery is not indicated at this stage.

3

(*Id*. at 24.) Armour was prescribed the Neurontin, which he indicates provided "some relief." (*Id*. at 7.) He was transferred out of the Porter County Jail to the Kankakee County Jail on October 4, 2016, which ended his interactions with Dr. Tchaptchet.

As to Armour's transient ischemic attacks (TIA),[2] he alleges that on August 18, 2016, his "blood pressure spiked to dangerous levels" due to pain from his previously untreated condition. (*Id*. at 4.) The nurse wanted to transport him to the emergency room, but, after conferring with Dr. Tchaptchet, the transport was cancelled. Instead, Armour was given Clonidine, a medication to lower his blood pressure, and he was subsequently placed in the medial isolation unit. The next day, he suffered another TIA. Again, although the medial staff wanted to transport him to another facility, Dr. Tchaptchet declined the transfer, prescribed more Clonidine, and told him to "try and get some rest." (*Id*. at 6.) Armour remained in medical isolation for a week, and he requested but did not receive CT scans and MRIs "to determine his condition as far as strokes or heart attacks." (*Id*.) Other than Clonidine, Armour did not receive treatment for the TIAs prior to his departure from the Porter County Jail on October 4, 2016.[3]

---

[2] "A transient ischemic attack (TIA) is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage. Often called a ministroke, a transient ischemic attack may be a warning. About 1 in 3 people who have a transient ischemic attack will eventually have a stroke, with about half occurring within a year after the transient ischemic attack." https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679 (last visited Feb. 18, 2020).

[3] In February of 2017, Armour received approval from the medical staff at the Kankakee County Jail for a CT scan. The findings were mostly normal with "the

4

Armour does not allege that he suffered any additional TIAs after his transfer, nor does he allege that he suffered a full, post-TIA stroke at any time. According to Armour, other than the CT scan and MRIs described in footnote three, he has not received any other treatment for the TIAs from the time he was transferred out of the Porter County Jail until the present day. (*See* DE # 30 at 3.)

The amended complaint requests $1,000,000 in compensatory damages and $9,000,000 in punitive damages from Dr. Tchaptchet. (DE # 16 at 10.) His motion for default judgment requests a lump sum of $9,999,000 but does not differentiate between the two types of damages sought, which is problematic. (DE # 30 at 5.) More importantly, although the amended complaint's well-pleaded factual allegations set forth above are deemed true for purposes of default, Armour has not sufficiently tied those allegations to the requested damages. "[T]o recover damages [in a default judgment proceeding] a plaintiff must prove that the Defendants caused the damages he sustained." *Tate v. Troutman*, 683 F. Supp. 2d 897, 907 (E.D. Wis. 2010), *aff'd sub nom Tate v. Riegert*, 380 Fed. Appx. 550 (7th Cir. 2010). Here, in his motion for default

---

possibility of demyelinating plaque in the setting of multiple sclerosis," so an MRI was scheduled. (DE # 16 at 25.) The subsequent April 3, 2017, MRI results were also mostly normal with "[s]cattered, faintly discrete high signal regions, periventricular deep white matter, consistent with scattered ischemic changes along distribution of lenticular striated arteries. However, limited multiple sclerosis with plaquing in these regions a diagnostic possibility. No high signal lesions in the right and left periventricular area or involvement of cerebellar peduncles, corpus callosum, militate against multiple sclerosis. Clinical correlation required, including other test results for multiple sclerosis." (*Id.* at 27.) The physician interpreting the results also noted, "Scattered periventricular glottic foci with little or no involvement of the optic nerve, corpus callosum, cervical cord or cerebellar peduncles. These areas most consistent with ischemic changes and not multiple sclerosis." (*Id.*)

5

judgment, Armour asserts that Dr. Tchaptchet "recklessly and unconcernness (sic) placed my central nervous system in permanent disfunction." (DE # 30 at 4.) Such a conclusory statement need not be taken as true. *See Tate*, 683 F. Supp. 2d at 907.

> Specifically, Armour claims that he is:
>
> now forced to walk with a cane and sometimes a walker due to partial paralysis on his right side of his body, suffers muscle wasting, muscle twitching, and extreme cramp outbreaks daily, loss of control over his bladder, having to wear disposable pull-up underwear, libido dysfunction/impotence, small vessel ischemic vascular disease brain (dementia) if white matter changes continue to progress over time, and depression which is being treated with anti-depression medication (Trazodone), loss of healthy vision, and speech, possible further surgery needed, and ongoing medical treatment with rehab, and home healthcare aid/assistance with medication, cooking, washing, and hygiene support.

(*Id*.) However, he does not provide any medical evidence or physician opinions attributing those issues/problems to the actions of Dr. Tchaptchet or his time spent in the Porter County Jail, nor does he provide any medical evidence establishing his current medical condition.[4] Armour's statement that Dr. Tchaptchet caused or permanently exacerbated his current impairments is undercut by several exhibits attached to his complaint and motion. For example, a week after his arrival at the Porter County Jail—and three days prior to when he alleges he began complaining to Dr. Tchaptchet—Armour submitted a request to medical staff stating he had "very little

---

[4] The most recent medical document provided is the report from the MRI performed on April 3, 2017, which states that clinical correlation and other tests are required to rule out multiple sclerosis. (DE # 30-1 at 20.) None of the documents provided indicate that Armour's lengthy list of ailments is specifically attributable to his undiagnosed neuropathy or the TIAs he experienced in August of 2016.

feeling in [his] right leg, arm, pain into neck right side. Need ex-ray. Former neck injury." (DE # 16 at 12; DE # 30-1 at 10.) He submitted another request the following day, noting that he was "a victim of a spinal injury." (*Id*. at 13; *Id*. at 11.) These documents suggest that at least some of Armour's current impairments pre-existed his interactions with Dr. Tchaptchet. Moreover, although Armour insists that the post-transfer CT scan and MRI "revealed that Armour has in fact suffered a series of (ischemic) strokes and not multiple sclerosis" and that Dr. Tchapchet "deliberately placed Armour's central nervous system in permanent disfunction" (DE # 16 at 8), the medical documents cited in support of that proposition are less than definitive. The MRI results from April of 2017 indicate only that "scattered ischemic changes" were noted, and the possibility of a multiple sclerosis diagnosis could not be ruled out without further testing. (DE # 16 at 27; DE # 30-1 at 20.) None of the documents indicate when the ischemic changes likely occurred, that the changes were because of Dr. Tchaptchet's treatment choices, or that the symptoms he is currently experiencing were the result of the undiagnosed neuropathy from July through September of 2016 or the TIAs he experienced in August of 2016. Without additional medical evidence or other such reliable and verifiable information, the court is unable to even begin to conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 at 793. Therefore, the instant motion will be denied, and Armour will be afforded time to gather the relevant evidence regarding his requested damages in order to refile his motion.

To the extent Armour is seeking compensatory and/or punitive damages for any pain and suffering he experienced with regard to his undiagnosed neuropathy from July 18, 2016, to September 22, 2016, he may submit a signed and sworn affidavit based on his own personal knowledge, describing such damages in detail and stating his reason for seeking each type of damage. He may also submit additional medical evidence to support his claims regarding the neuropathy and its effects during that time period. The same is true with regard to the two TIAs he experienced on August 18–19, 2016, and any related pain or issues up until the time of his transfer on October 4, 2016.

However, to the extent he is seeking damages for his various long-term ailments based on the conclusory statement that Dr. Tchaptchet "placed [his] central nervous system in permanent disfunction," he must provide additional documentation in the form of detailed medical evidence and/or physician opinion(s) linking those injuries and symptoms to Dr. Tchapchet's actions (or inaction) before a hearing on the matter is scheduled. *See* Fed. R. Civ. P. 55(b)(2) (providing that the court may conduct hearings or make referrals to "determine the amount of damages" and "establish the truth of any allegation by evidence"); *Greene v. Will*, No. 3:09CV510-PPS, 2015 WL 7575848, at *2 (N.D. Ind. Nov. 24, 2015) (To establish the proper amount of damages, "the court may, but is not required to, conduct a hearing, and may consider affidavits, pleadings, or other proper documentary evidence in accordance with Fed. R. Civ. P. 55(b)(2)."); *see also Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992) (Before holding a hearing to "establish the truth of any averment" in the complaint, the court should

8

make "its requirements known in advance" so that he can "understand the direction of the proceeding and marshall such evidence as might be available [to him]."). Once Armour refiles his motion for default judgment with the relevant supporting documentation described above, the court will determine whether it is appropriate to set the matter for a hearing.

For these reasons, the court:

(1) **DENIES WITH LEAVE TO REFILE** the motion for default judgment (DE # 30);

(2) **DENIES AS MOOT** the request for status, rulings, and orders (DE # 33);

(3) **GRANTS** Donald Lee Armour until **March 23, 2020**, to re-file the motion for default judgment including signed affidavit(s), additional medical documentation, and/or physician opinions regarding the damages requested; and

(4) **CAUTIONS** Donald Lee Armour, that if he does not respond by the deadline, this case may be dismissed without further notice.

**SO ORDERED.**

Date: February 21, 2020

　s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT